DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Alejandro Partee, appeals from his conviction and sentence in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On October 10, 2005, Akron Police Officers Jeffrey Lamm ("Lamm") and Calvin Barker ("Barker") responded to a domestic violence call at 238 Rhodes Ave. in Akron, Ohio. Upon arrival, Rhonita Cook ("Cook") answered the door. The victim, Tara Breinich ("Breinich"), was pregnant and had a towel over the left side of her face. Lamm noted that she had a cut over her left eye and that she appeared upset. Breinich told Lamm that Appellant had hit her. *Page 2 
However, before police arrived, Appellant left the apartment through the back door. Akron Fire Department paramedic Sean McFalls ("McFalls") arrived on the scene shortly after the police. Breinich informed McFalls that the father of her unborn child had punched her in the eye and then when she fell, he kicked her in the stomach. McFalls noted that Breinich was pregnant, her face was swollen, and her eye swollen shut. McFalls further noted a bruise on the back of her head. Breinich was treated for a head injury as well as an abdominal injury. Paramedics determined that Breinich needed immediate medical attention because her injuries could possibly be life-threatening. Breinich was transported and admitted to Akron General Medical Center for treatment. She suffered an orbital fracture, a concussion, and a placental abruption. Two days later, labor was induced and Breinich gave birth to a baby boy.
 {¶ 3} On October 19, 2005, Appellant was arrested on domestic violence charges stemming from the October 10, 2005 incident. He was indicted on October 31, 2005 on one count of domestic violence, in violation of R.C.2919.25(A) and one count of felonious assault, in violation of R.C.2903.11(A)(1). On January 9, 2006, the indictment was supplemented to add eight counts of violating a protection order, in violation of R.C.2919.27. On January 31, 2006, the indictment was again supplemented to add one count of felonious assault, in violation of R.C. 2903.11(A)(1). Appellant pled not guilty to all the charges. The matter proceeded to a jury trial on February 23, 2006. On February 24, 2006, *Page 3 
Appellant pled guilty to all eight charges of violating a protection order. The trial proceeded on the remaining charges. At the end of the State's case and at the end of all the evidence, Appellant moved for a Crim.R. 29 acquittal. His motion was granted as to the supplemental count of felonious assault. The jury returned a guilty verdict as to one count of felonious assault and one count of domestic violence. Appellant was sentenced to three years incarceration on the felonious assault charge and one year on the domestic violence charge, to run concurrently. Appellant appealed and this Court dismissed his appeal for lack of a final appealable order. On remand, the trial court re-sentenced Appellant. Appellant timely appeals his sentencing and convictions raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE LOWER COURT ERRED IN PERMITTING THE APPELLEE TO PRESENT OTHER ACTS TESTIMONY FROM WITNESSES BECAUSE SUCH TESTIMONY SHOULD HAVE BEEN EXCLUDED PURSUANT TO EVID.R. 401, EVID.R. 402, EVID.R. 403, EVID.R. 404(B) AND R.C. 2945.59."
 {¶ 4} In his first assignment of error, Appellant contends that the trial court erred in permitting the State to present other acts testimony from witnesses in violation of the Rules of Evidence. We disagree.
 {¶ 5} A trial court possesses broad discretion with respect to the admission of evidence. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, at *2, *Page 4 
citing State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not overturn the decision of a trial court regarding the admission or exclusion of evidence absent a clear abuse of discretion that has materially prejudiced the defendant. Ditzler, supra. See, also,State v. Ali (Sept. 9, 1998), 9th Dist. No. 18841. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 6} The Supreme Court of Ohio has articulated two requirements for the admission of other acts evidence. State v. Broom (1988),40 Ohio St.3d 277, 281. First, substantial evidence must prove that the other acts were committed by the defendant as opposed to another person. Id. Second, the other acts evidence must fall within one of the theories of admissibility enumerated in Evid.R. 404(B). Id., see, also, State v.Lowe (1994), 69 Ohio St.3d 527, 530.
 {¶ 7} Evid. R. 404(B) provides that evidence of prior criminal acts completely independent of the crime for which a defendant is being tried may be admissible for purposes other than proving the conformity of an accused with a certain character trait exhibited during the incident in question. Specifically, Evid.R. 404(B) provides the following:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity *Page 5 
therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added).
 {¶ 8} Proof of one of the purposes set forth in Evid.R. 404(B) must go to an issue which is material in proving the defendant's guilt for the crime at issue. State v. DePina (1984), 21 Ohio App.3d 91, 92, citingState v. Burson (1974), 38 Ohio St. 2d 157, 158.
 {¶ 9} In the instant case, Appellant was charged with domestic violence against his girlfriend who was pregnant with his child. During her testimony, Breinich testified that Cook had come over and the two had gotten into a physical fight. Breinich claimed that she started the fight by calling Cook names, then hitting her. She stated that they "tore up the living room" during the fight. Breinich's testimony on the witness stand directly contradicted statements she made to paramedics at the time of the incident that Appellant, the father of her unborn child, hit her. As such, Breinich's testimony put Appellant's identity in question.
 {¶ 10} The Supreme Court of Ohio has held that evidence of other acts may be admitted into evidence when the evidence of other acts establishes a modus operandi, a "`unique, identifiable plan of criminal activity[,]'" that is applicable to the crime with which defendant is charged. State v. Lowe (1994), 69 Ohio St.3d 527, 531, quoting State v.Jamison (1990), 49 Ohio St.3d 182, syllabus. *Page 6 
 {¶ 11} The State presented testimony from Jennifer Lepley ("Lepley") who had two children with Appellant. When asked if she loved Appellant, she stated, "[absolutely." She stated that on October 14, 2000, Appellant assaulted her while she was pregnant. According to Lepley, "[h]e didn't beat the crap out of me or anything like that. He simply pulled me by my hair and pulled me to the ground." The State asked Lepley if she remembered writing a statement at the time of the incident that Appellant pulled her to the ground by her hair then kicked her in the stomach twice and told her he would kill her. Lepley stated that she knew she made a statement, but did not remember what she wrote down. Lepley then testified that Appellant went to jail for nine months for the assault.
 {¶ 12} The State also presented the testimony of April Cook ("April"). She testified that she had been in a relationship with Appellant and that they had lived together for approximately a year and a half. She testified to an assault incident that occurred while the two were arguing in 1993. April was pregnant at the time. She stated that Appellant grabbed and squeezed her wrist so hard she went to the hospital because she thought it was broken. April further testified that in 1995 she observed Appellant jump on his girlfriend at the time and begin to choke her. When April attempted to intervene, Appellant punched her in the face.
 {¶ 13} In a factually similar case, State v. Roper, 9th Dist. No. 22566, 2005-Ohio-6327, reversed on other grounds, the State presented testimony from two former girlfriends of the defendant regarding their knowledge of his prior acts of *Page 7 
violence against women occurring between 1977 and 2004. Both testified that the defendant had assaulted them while they were pregnant with his children. Id. at ¶ 11. The trial court ruled that this prior acts evidence was admissible because it "demonstrates a scheme or plan of violence against his former girlfriends[.]" Id. at ¶ 12. The court citedBroom to explain that because "intent, purpose and knowledge are elements of several of the crimes charged, the Court finds the other act evidence to be particularly relevant." Id. We affirmed the trial court's decision. Id. at ¶ 14.
 {¶ 14} The testimony regarding other acts is clearly admissible in this case. First, Lepley testified at trial that Appellant assaulted her; her statement at the time of the incident implicated Appellant; and Appellant served a prison sentence for the assault. Further, both Lepley and April identified Appellant in court. Accordingly, this Court finds there was substantial evidence that these other acts were committed by Appellant. Second, the other acts evidence establishes a modus operandi that can be used to ascertain identity in the instant case.Lowe, 69 Ohio St.3d at 531. Again, Breinich attempted to retract her statements made at the time of the instant assault and place the blame on Cook. The other acts evidence shows that Appellant has a history of assaulting the women who were pregnant with his children. This modus operandi provides a "behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." Id. Therefore, *Page 8 
we cannot say the trial court abused its discretion when it admitted the other acts testimony. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE."
 {¶ 15} In his second assignment of error, Appellant contends that his conviction was against the manifest weight of the evidence and based on insufficient evidence. We disagree. An evaluation of the weight of the evidence is dispositive of both issues in this case.
 {¶ 16} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *4, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (overruled on other grounds). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
 {¶ 17} Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency. *Page 9 
 {¶ 18} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 19} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 20} In the present case, Appellant was convicted of felonious assault and domestic violence. To find Appellant guilty of felonious assault, the jury had to find that he knowingly caused "serious physical harm to another or to another's unborn[.]" R.C. 2903.11(A)(1). Appellant does not contest that Breinich suffered serious physical harm, but rather he contests the jury's finding that he was the one to inflict the harm. As such, he contends that the jury lost its way when it convicted him of felonious assault and domestic violence because the weight of the evidence showed he did not assault Breinich. We do not agree.
 {¶ 21} As Appellant notes, at trial, Breinich stated that Cook caused her injuries. She also testified that she loved Appellant, that they are still in a relationship, and that she was very upset when he went to jail. She testified that Cook had come over and the two had gotten into a physical fight. Breinich *Page 10 
claimed that she started the fight by calling Cook names, then hitting her. She stated that they "tore up the living room" during the fight. However, other evidence at trial directly contradicted Breinich's claims, thus damaging her credibility. Cook testified that she arrived at Breinich's apartment and found her with her eye swollen shut. She stated that Appellant was at the apartment and told her that he had punched Breinich in the face. Cook testified as to Appellant's stated justification: "he was coming to get his keys and she hid his keys and all he wanted was his keys. And she got mad, hit him with the portable CD player, so he hit her." Further, after he was arrested, Appellant told Akron Police Officer Danny Ulman that he went over to Breinich's apartment, they got into an argument and that she hit him and he pushed her, she fell down and he ran away. Lamm testified that Cook was never a suspect in this case. Finally, Breinich told McFalls that the father of her child assaulted her. We find that Breinich's testimony was biased and not credible because it was contradictory to several other witnesses' testimony and inconsistent with her own prior statements. Accordingly, the jury did not create a manifest miscarriage of justice when it found that Appellant seriously injured Breinich.
 {¶ 22} Appellant further contends that even if he was guilty of the assault, the evidence at trial was not sufficient to establish the elements of domestic violence. R.C. 2919.25 defines domestic violence as "knowingly caus[ing] or attempting] to cause physical harm to a family or household member." R.C. *Page 11 
2918.25(F)(1)(b) defines family or household member in part as "[t]he natural parent of any child of whom the offender is the other natural parent[.]" We have determined above that the evidence clearly proved Appellant knowingly caused harm to Breinich. Further, Breinich testified at trial and Appellant concedes in his brief that he is the father of the child. Appellant argues for the first time on appeal that R.C.2919.25(F) does not include an unborn person in the definition of child. Appellant argues that because Breinich did not give birth until after the assault, they did not have a child in common and as such, he cannot be found guilty of domestic violence. However, a review of Appellant's Crim.R. 29 motion reveals that his only argument regarding the domestic violence charge was that there was a lack of evidence to prove that he was the father of Breinich's baby. We have repeatedly held that when an Appellant sets forth specific grounds in his Crim.R. 29 motion, he forfeits all other arguments on appeal. State v. Hilton, 9th Dist. No. 21624, 2004-Ohio-1418, at ¶ 8, citing State v. Swanner (May 18, 2001), 4th Dist. No. 00CA2732; State v. Cayson (May 14, 1998), 8th Dist. No. 72712, at *2, citing U.S. v. Dandy (C.A.6, 1993), 998 F.2d 1344, 1356-57
(stating that "[a]lthough specificity of grounds is not required in a [Crim.R. 29] motion, * * * all grounds not specified are waived" (Citations omitted.)). Because Appellant set forth specific grounds in his Crim.R. 29 motion, but did not include the argument that an unborn child is not a child under the statute, he has forfeited this argument. Therefore, we *Page 12 
are precluded from addressing it. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT SENTENCED APPELLANT BEYOND THE MINIMUM SENTENCE BECAUSE IT VIOLATED HIS RIGHT TO TRIAL BY JURY GUARANTEED BY THE 6TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION[.]"
 {¶ 23} In his third assignment of error, Appellant contends that the trial court committed plain error when it sentenced him beyond the minimum sentence because it violated his constitutional right to a trial by jury. More specifically, Appellant contends that the trial court's imposition of the non-minimum prison term was unconstitutional because only a jury can make the findings necessary to impose such a sentence and that the matter must, therefore, be remanded for re-sentencingunder State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. We disagree.
 {¶ 24} At the outset, we note that Appellant was initially sentenced on March 2, 2006. The Ohio Supreme Court decided Foster on February 27, 2006. Appellant did not object to the constitutionality of his sentence at the sentencing hearing. Accordingly, Appellant has forfeited the issue for appellate purposes. State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, at ¶ 21. However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]" Goldfuss v. Davidson (1997), *Page 13 79 Ohio St.3d 116, 121quoting Crim.R. 52(B). Therefore, we are confined to a plain error analysis.
 {¶ 25} In Foster, supra, the Court "held that those portions of Ohio's sentencing scheme requiring judicial fact-finding were unconstitutional." Payne, supra, at ¶ 6, citing Foster, at paragraphs one, three, and five of the syllabus. Therefore, "since Foster, trial courts no longer must navigate a series of criteria that dictate the sentence and ignore judicial discretion. Id. at ¶ 26.
 {¶ 26} The Foster Court noted that "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster, at ¶ 42. Moreover, postFoster, it is axiomatic that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Therefore, post Foster, trial courts are still required to consider the general guidance factors in their sentencing decisions. In its journal entry, the trial court specifically stated that it had considered the purposes and principles of sentencing under R.C. 2929.11
and balanced the seriousness and recidivism factors under R.C. 2929.12. The trial court additionally stated that it had considered the record and oral statements when making its decision.
 {¶ 27} R.C. 2929.11 provides in pertinent part as follows: *Page 14 
 "(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
 "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
Appellant was convicted of a fourth degree felony and a second degree felony. Accordingly, the trial court was permitted to utilize its discretion to sentence him on the fourth degree felony conviction within the range of six to 18 months, and within two to eight years for the second degree felony conviction. R.C. 2929.14(A)(2) and (4). Appellant was sentenced to 12 months incarceration on the domestic violence charge, a fourth degree felony, and three years incarceration on the felonious assault charge, a second degree felony. Accordingly, Appellant's sentence falls within the statutory ranges set forth in R.C.2929.14.
 {¶ 28} Upon review, this Court cannot say that the trial court committed plain error in sentencing Appellant. The evidence at trial showed that Appellant had a history of violence against pregnant women. Further, the evidence showed that Appellant had a prior conviction for corruption of a minor and pled guilty to a prior charge of domestic violence. R.C. 2929.12(D)(2). The trial court found that *Page 15 
"something in addition to the minimum is required based upon his prior record, the fact that this was an act of violence." As Foster affords the trial court the discretion to consider the above factors, the trial court certainly did not err when it followed the dictates of the Ohio Supreme Court. Accordingly, we cannot say that the trial court committed plain error when it sentenced Appellant to 12 months incarceration on the domestic violence charge, and to three years incarceration on the felonious assault charge. Appellant's third assignment of error is overruled.
 III. {¶ 29} Appellant's assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 16 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J., BAIRD, J. CONCUR.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1